The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Tony Ray HOLLOWAY, Defendant-Appellee.

No. 81SA131.

Supreme Court of Colorado, En Banc.

Aug. 3, 1982.

liminary hearing that on the night in question, he responded to a police dispatch relaying a citizen complaint of a burglary in progress. He arrived at the residence, walked into the backyard, and heard the sliding glass door open on the second level. Shining his flashlight toward the door, he saw someone looking back at him. He yelled, "Police. Freeze." The individual ducked back into the house, and then fled out a downstair's door, heading in a southwesterly direction. Deputy Revel testified that he then broadcast the incident over the radio, describing the suspect as being a black male, approximately 20 years old, 5'4" tall, with an afro-type haircut, and wearing black pants and a dark-colored shirt. On cross-examination, Deputy Revel acknowledged that he had known the defendant for six years prior to this incident, and that in his broadcast description he did not provide the defendant's name, although at the time he felt he "knew who the person was."

Deputy William Gay testified that he drove to the area to provide back-up support. He described Deputy Revel's broadcast as hurriedly given, presenting the suspect as a black male, of short build, and wearing dark clothing. As he arrived in the area, Deputy Gay observed the defendant walking along a street approximately one block east of the burglarized home. Deputy Gay confronted the defendant, who claimed he was en route home from a friend's house. He described the defendant as being out of breath and perspiring heavily. He also testified that upon seeing the defendant, Deputy Revel had exclaimed, "That's him."

Subsequent to the defendant's arrest, the police dispatch tapes were erased and reused. It was revealed that due to the limited number of tapes, each tape was reused every 30–35 days, unless otherwise preserved. This erasure was brought to the defense counsel's attention after the preliminary hearing. A motion to dismiss was filed asserting that the defendant's due

Robert L. Russel, Dist. Atty., Keith Cross, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

J. Gregory Walta, Colorado State Public Defender, Barbara S. Blackman, Deputy State Public Defender, Denver, for defendant-appellee.

HODGES, Chief Justice.

The People appeal the district court's dismissal of second-degree burglary[1] and criminal mischief[2] charges filed against the defendant, Tony Ray Holloway. The court's dismissal was based on the prosecution's inadvertent destruction of police dispatch tapes. These tapes were deemed crucial to the defendant's misidentification defense. While we agree that the defendant's due process rights were violated by the destruction of the tape, we find the district court's dismissal of the charges is too severe a sanction under the circumstances. Accordingly, we reverse and order that the charges be reinstated.

Deputy Charles Revel of the El Paso County Sheriff's Office testified at the pre-

---

1. Section 18 4 203, C.R.S.1973 (1978 Repl.Vol. 8).

2. Section 18–4–501, C.R.S.1973 (1978 Repl.Vol. 8).

process rights had been violated. Following a hearing, the court dismissed the case.

In *People v. Morgan*, 199 Colo. 237, 606 P.2d 1296 (1980), we provided the guidelines for determining whether a defendant's due process rights have been violated when evidence has been lost or destroyed. Quoting from earlier cases, we noted that the three-prong test is:

"(1) Whether the evidence was suppressed or destroyed by the prosecution; (2) whether the evidence is exculpatory; and (3) whether the evidence is material to the defendant's case."

■ If it is determined that the defendant's due process rights have been violated, we will then review whether the trial court has fashioned an appropriate remedy, recognizing that the trial court has broad discretion in this regard. *People v. Morgan, supra.* See also *People v. Poole*, 192 Colo. 56, 555 P.2d 980 (1976).

■ Applying these guidelines to the facts of this case, there is no question but that the dispatch tapes were destroyed by the prosecution, albeit inadvertently, thus, the first test is met. *Second*, having shown that the tapes were "not merely incidental" to his theory of defense, the defendant has satisfied the next test. *People v. Morgan, supra.* In other words, having presented evidence that identification was clearly at issue and that the dispatch tape bore on this issue by containing the citizen complaint and Deputy Revel's broadcast, the defendant established "the reasonable possibility that the evidence could have been of assistance to the defense." *People v. Morgan, supra. Third*, since the tape was relevant to the defense theory of misidentification, the destroyed tape was material. Thus, a due process violation having been established, the remaining question is whether the district court chose the appropriate sanction.

■ As we recognized in *People v. Morgan, supra*, the trial court has broad discretion in fashioning a proper remedy to protect the defendant's rights where there has been a loss or destruction of evidence.

However, many remedies short of dismissal of the charges may be imposed which will adequately protect the defendant's rights. Dismissal is a drastic remedy to be reserved for situations where no other sanction would attain the proper result. *See People v. Norwood*, 37 Colo.App. 157, 547 P.2d 273 (1975).

■ The inadvertent destruction of the police dispatch tape does not impair the defendant's ability to defend against the criminal charges here, if other alternative evidentiary procedures are inaugurated to compensate for the loss of the tapes.

1. *The citizen complaint.* Defense counsel informed the trial court of a "report" which revealed that the citizen informing the police of the burglary had described the burglar as a caucasian male. Further, that this citizen was unavailable for trial as his whereabouts were unknown.

The record before us does not contain this "report," yet, if it is reliable, it, or parts of it, can be presented to the jury as directed by the trial court. Whether the parties stipulate that, if introduced, the tape would have contained the citizen message with the reference to a caucasian male, or whether the report itself may be introduced, or whether a more innovative procedure should be utilized, the trial court must investigate these and other possible options.

2. *The broadcast.* The defendant argues that the discrepancies between Deputy Revel's recall of how he described the burglar, and Deputy Gay's recollection of the broadcast, illustrates his need for the tape, not only for impeachment purposes, but in the event of fabrication.

Although we do not condone the loss of the police dispatch tape, this is a situation where both police officers, and possibly others who overheard the broadcast, are available to testify. Deputy Revel can be fully examined as to his opportunity to view the burglar and the accuracy of his broadcast description. *See People v. Roblas*, 193 Colo. 496, 568 P.2d 57 (1977); *People v. Alonzi*, 40 Colo.App. 507, 580 P.2d 1263 (1978). The defendant can receive a fair trial under the

circumstances here. The record before us clearly reveals that the trial court had several alternatives, short of dismissal of the charges, which would have afforded the defendant the use of any evidentiary inferences from the dispatch tapes which could be utilized in support of his misidentification defense.

The trial court's judgment of dismissal is reversed, and the cause is remanded for reinstatement of the charges.

ERICKSON, J., does not participate.