The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Melvin W. NAVE, Defendant-Appellant.

No. 82CA0997.

Colorado Court of Appeals, Div. I.

March 15, 1984.

Rehearing Denied April 19, 1984.

Certiorari Denied Sept. 24, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Dolores S. Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Massaro & Nugent, Edward J. Nugent, Sp. Deputy Public Defender, Grand Junction, for defendant-appellant.

BERMAN, Judge.

Defendant, Melvin W. Nave, appeals from his conviction for theft over $200. We affirm.

On January 26, 1982, at about 9:45 p.m., the victim returned to his home in Denver

to find that it had been broken into, ransacked, and that various stereo and camera equipment and coins had been stolen. At about 10:00 p.m., Denver police officers Larry Clay and Horace McGilberry responded to the victim's burglary call and took a report.

Approximately three hours later, these same officers were responding to a silent alarm, when they observed the defendant and his co-defendant walking across the street carrying several large items. When the defendant and his cohort saw the police car, they dropped the items and began to run. Officer Clay chased the two men, but lost them, whereupon he broadcast a description of the two suspects and returned to recover the dropped items.

A few minutes after hearing Officer Clay's radio description, Officer Rodney Huskey and his partner, while on routine patrol, observed two persons matching the description broadcast by Officer Clay walking across the street. Officer Huskey notified Officers Clay and McGilberry of their observation and intention to stop the two suspects.

Officers Clay and McGilberry immediately responded to Officer Huskey's call and, upon arrival at the scene of detention, identified defendant and his confederate, assumed custody, and arrested them. Both suspects were breathing heavily, their hearts were beating rapidly, and they had dried grass in their hair.

The defendant and his cohort were tried together, the jury found defendant guilty of theft over $200, and the court imposed sentence. This appeal followed.

### I.

Defendant's first contention is that the trial court erred in denying defendant's motion to dismiss, which motion was based on the police department's destruction of a taped radio broadcast of Officer Clay's description of the two robbery suspects after his chase in the early morning hours of January 27, 1982. We disagree with defendant's contention.

■ We note initially that the attorney general conceded the existence of a due process violation on oral argument, while nevertheless maintaining in its written brief that no due process violation occurred. Since the existence of due process is a question of law, we are not bound by the attorney general's oral concession. *See C.R.A.H. by Pueblo County concerning P.M.M.,* 647 P.2d 239 (Colo.App.1981) (appellate court may decline to accept a concession of error). Here, we find the attorney general's brief to be the more accurate statement of the applicable law.

The test for determining whether a defendant's due process rights have been violated when evidence has been lost or destroyed is:

"(1) whether the evidence was suppressed or destroyed by the prosecution; (2) whether the evidence is exculpatory; and (3) whether the evidence is material to the defendant's case." *People v. Holloway,* 649 P.2d 318 (Colo.1982).

Here, at the very least, the third prong of the test cannot be met. Therefore, there was no violation of defendant's due process rights.

We note first that, here, defense counsel did not request preservation of the dispatch tape of January 27, 1982, until March 1, 1982—33 days after defendant's arrest, and three days after the 30-day period for routine destruction of dispatch tapes for that date had expired. Hence, as stated in *People v. Bynum,* 192 Colo. 60, 556 P.2d 469 (1976), the reason that the prosecution could not produce a tape upon defense counsel's request was that "it was routinely destroyed before its possible value, and quite possibly its existence, was made known to the prosecutor through a request from the defense." *People v. Bynum, supra.*

Second, we hold that the January 27, 1982, dispatch tape was not material to defendant's case. Our Supreme Court held in *Bynum, supra,* that:

"[The] mere possibility that an item of undisclosed information might have helped the defense or might have affect-

ed the outcome of the trial, does not establish 'materiality' in the constitutional sense.... The proper test is not one of deciding whether the non-disclosure is completely harmless, but of determining whether the omitted evidence would have created a reasonable doubt as to defendant's guilt that did not exist otherwise. [This] strict standard of materiality [applies] in cases, as here, where the evidence is not produced because it was innocently destroyed by the state."

Here, as was the case in *Bynum, supra,* the subject matter of the tape at issue was disclosed through the detailed testimony of several prosecution witnesses. Officer Clay testified that after observing the defendant and his cohort for approximately 15 to 25 seconds under lighted conditions, he aired the following description:

"One party approximately 5 foot 7 inches wearing a dark blue jacket, blue pants and a white or light colored hat. The second party was about 5 feet tall, wearing a black leather jacket and dark pants."

Officer Huskey testified that the description that he and his partner heard aired was as follows:

"Two black males, one approximately 5 foot 7 inches wearing a light colored hat, blue jacket, possibly jean-type, possibly blue jean pants; the second party was much smaller, approximately 5 feet tall, wearing a dark coat and blue jeans."

Given this consistent testimony of the contents of the broadcast, we conclude the tape could not have created a reasonable doubt as to defendant's guilt.

■ Further, we note that:

"[T]he trial court has broad discretion in fashioning a proper remedy to protect the defendant's rights where there has been a loss or destruction of evidence. However, many remedies short of dismissal of the charges may be imposed which will adequately protect the defendant's rights. Dismissal is a drastic remedy to be reserved for situations where no other sanction would attain the proper result." *People v. Holloway, supra.*

The defendant received a fair trial under the circumstances here. The trial court had several alternatives, short of dismissal of the charges, which it exercised, thereby affording the defendant the use of any evidentiary inferences arising from the officer's broadcast description of the alleged burglars which he could use to support his claim of misidentification. Specifically, as in *Holloway,* two officers were available to testify and did testify as to the contents of the broadcast description, and these officers were subject to cross-examination by the defense. Therefore, the court's refusal to dismiss the charges was not error. *People v. Holloway, supra.*

## II.

Defendant next contends that the trial court erred in denying defendant's motion for mistrial after the prosecution made the following statement in closing:

"Those individuals, the defendants, had this stereo equipment with them from the burglary. As we know they didn't take the stand, *they don't have to take the stand. We've gone through that in voir dire, the court instructed you a few minutes ago on that."* (emphasis supplied)

We disagree with defendant's contention that such a statement mandates the granting of a motion for mistrial.

■ "Not every reference to the exercise of the right to remain silent is an error requiring reversal." *People v. Cornelison,* 44 Colo.App. 283, 616 P.2d 173 (1980). The determining factors are (1) whether the defendant's silence was used by the prosecution as a means of creating an inference of guilt, and (2) whether the prosecution argued that defendant's silence constituted an implied admission of guilt. *People v. Cornelison, supra.*

■ Here, the prosecutor did not create an inference of guilt, nor did he argue that defendant's silence constituted an implied admission of guilt. Rather, his remarks merely reemphasized the law, as it was established in voir dire and the court's in-

structions; namely, that the defendant does not have the burden of proof, that he may therefore remain silent, and that the jury is to draw no inferences of guilt from that silence.

In addition, the jury was instructed as follows:

> "The arguments, statements and objections made by counsel to the Court or to each other ... should not be considered by you in arriving at your verdict."

Given the absence of an abuse of discretion, the trial court's ruling on the mistrial motion will not be disturbed on review. *People v. Cornelison, supra; People v. Saars*, 196 Colo. 294, 584 P.2d 622 (1978).

### III.

Defendant's final contention is that the prosecution's reference in closing to a letter prepared by Officer Conlon, which was marked but not admitted into evidence, necessitated the granting of a mistrial, and that, therefore, the trial court erred by denying defendant's motion for mistrial. Once again, we disagree.

> "It is fundamental in Colorado that the scope of final argument rests in the sound discretion of the trial court [and its exercise of that discretion] ... will not be disturbed by an appellate court unless it is *clearly* apparent that in so ruling the trial court *grossly* abused its discretion which abuse resulted in *prejudice and a denial of justice.*" *People v. Motley*, 179 Colo. 77, 498 P.2d 339 (1972) (emphasis supplied).

Here, the prosecution's reference to the letter was very brief, and an examination of the record reveals, as it did in *People v. Motley, supra*, "that the remark of the district attorney here in question was inconsequential when viewed against the host of evidence, upon which the jury could have based its determination of the [defendant's] guilt. No prejudicial error can be said to have resulted from such an incidental remark, and the evidence does support the conviction."

 Second, as we previously mentioned, the jurors were instructed that they were not to consider the arguments, statements, and objections in arriving at their verdict. In the absence of a showing to the contrary, it is presumed that the jurors understood this instruction and heeded it. *People v. Motley, supra; Allarid v. People*, 162 Colo. 537, 427 P.2d 696 (1967).

Judgment affirmed.

PIERCE and METZGER, JJ., concur.