The PEOPLE of the State of
Colorado, Petitioner,

v.

DISTRICT COURT, CITY AND COUNTY
OF DENVER, and one of the Judges
thereof, J. Stephen Phillips, Respondents.

No. 90SA491.

Supreme Court of Colorado,
En Banc.

April 8, 1991.

Norman S. Early, Jr., Dist. Atty., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Denver, for petitioner.

Coghill & Goodspeed, P.C., Patrick L. Ridley, David J. Richman, Denver, Tone T. Schauer, Boulder, for respondents.

H. Patrick Furman, Boulder, John M. Richilano, Denver, for amicus curiae The Colo. Crim. Defense Bar, Inc.

Justice LOHR delivered the Opinion of the Court.

The People of the State of Colorado brought this original proceeding under C.A.R. 21, seeking relief in the nature of prohibition or mandamus from an order of the Denver District Court requiring payment of $19,131 to the defendant's attorneys in a criminal proceeding as a sanction for violation of discovery rules. The sum represented that part of the defendant's attorney's fees characterized by the court as "unnecessary fees generated by the discovery failure." The order provided in the alternative that if the payment were not made by a specified time the case would be dismissed. We issued a rule to show cause why the order should not be vacated, and now make the rule absolute.

## I.

Davis Vick was charged with first degree sexual assault. *See* § 18–3–402, 8B C.R.S. (1986). Vick admitted to having sex with the alleged victim, J.J., but defended on the ground that she consented. Vick and J.J. were the only witnesses to the incident. Conflicting testimony was adduced at trial.

J.J. testified to the following version of the events. On the night of the incident, she had gone out with a friend, Susie Anderson, and some of Anderson's friends. They had gone first to Anderson's house, then to Caldonia's, then briefly to Rick's Cafe, and finally to the Tijuana Yacht Club at the Tivoli. J.J. had four alcoholic drinks at Caldonia's, left there around 9:30, and had no more alcoholic beverages that evening. She saw Vick at the Tijuana Yacht Club. J.J. knew him because he had formerly been engaged to her sister, but she had not seen him for two or three years. J.J. and Vick talked, danced two dances, then argued about J.J.'s sister. J.J. left Vick to search for Anderson, but was unable to find her. J.J. ran into Vick again and he helped her with the search, which proved unsuccessful. Vick asked J.J. how she had arrived at the Tivoli. She replied that she had been a passenger in her own car. A friend had driven the car but had been unable to obtain admission to the bar. Vick suggested that J.J. had a little too much to drink and offered her a ride home. She accepted. Vick took J.J. to his truck, pinned her down inside, pulled a gun on her, loaded it, then raped her. The sexual assault occurred around midnight. Vick then drove J.J. home, pushed her out of the truck and drove away.

Vick testified to a very different version of what transpired that evening. He saw J.J. at the Tijuana Yacht Club. They talked briefly. Vick danced with someone else, then J.J. pulled him onto the dance floor. J.J. danced suggestively. J.J. approached Vick later and asked him to buy her a drink. J.J. ordered an alcoholic beverage which she quickly drank. J.J. challenged Vick to have sex with her and led him out of the bar. J.J. began to undress when they reached his truck. The two then had consensual sex. J.J. became upset when Vick ejaculated in her, and requested that he take her home. Vick complied.

The trial in this case began on October 15, 1990. After the jury reported that it was unable to reach a verdict, the court declared a mistrial and set a new trial for November 26, 1990. Six days prior to retrial the defense filed a motion to dismiss alleging that the prosecution had failed to disclose exculpatory information. In support of this motion the defense attached a Supplemental List of Witnesses filed by the prosecution on August 13, 1990. The list incorrectly designated witness Andrew Hamrick as Andrew Hamnick, with "Ad-

dress Unknown." The defense alleged that the prosecution discovered the error and met with Hamrick on September 14, 1990, prior to the trial. At that meeting Hamrick disclosed what the defense characterized as potentially exculpatory evidence. The prosecution did not inform the defense of this information.

At a hearing on the motion to dismiss on November 26 and 27, 1990, the prosecuting attorney, Leslie Hansen, testified that she did not consider Hamrick's information material because his memory was vague and his information was cumulative to that provided by Susie Anderson and J.J. Hamrick testified that he had met with Hansen on September 14, 1990. During that meeting Hamrick told Hansen that he was with J.J., Susie Anderson, and others on the night of the alleged sexual assault; that they drank heavily beginning before they went to Caldonia's; that prior to arrival at the Tijuana Yacht Club the group was refused service at Rick's Cafe because J.J. was intoxicated and boisterous; that he had driven J.J.'s car to the Tijuana Yacht Club; that he saw J.J. with Vick at the Tijuana Yacht Club; and that he overheard J.J. tell Susie Anderson that she was leaving with Vick.[1]

The trial court found that Hamrick's testimony was material impeachment evidence, not made available to the defense in violation of Crim.P. 16 and the principles of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, the trial court found that Hamrick's testimony conflicted with that of J.J. on (1) her degree of intoxication, (2) her ability to locate members of her party prior to leaving the Tijuana Yacht Club with Vick,[2] and (3) whether Hamrick, who drove J.J.'s car to the Tivoli, was present in the Tijuana Yacht Club. As a sanction the trial court ordered payment of attorney's fees to the defense attorneys covering the period from the eve of trial to the date of the order. The order required "the office of the District Attorney" to pay $19,131 to defense attorneys by December 7, 1990, at 11:30 a.m., and provided that if payment were not timely made "the case shall be dismissed." The court later clarified that order by stating that the award was against the People of the State of Colorado and not the office of the district attorney or any individual attorney.

The People moved for reconsideration. At a hearing on the motion, the trial court reiterated its earlier findings and specifically found that the violation by the prosecution was not willful. The trial court agreed, however, to hold a hearing on the amount of the sanction. The court ordered payment of $15,000 into an escrow account pending the hearing in order to avoid dismissal.

The People petitioned this court for relief under C.A.R. 21. We issued a rule to show cause why the order imposing the sanctions should not be vacated.

## II.

■ The trial court ruled that the failure by the prosecution to disclose potentially exculpatory information violated both Crim.P. 16 and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). That ruling is supported by the record.

Rule 16 of the Colorado Rules of Criminal Procedure provides in pertinent part that "[t]he prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor." Crim.P. 16(I)(a)(2), 7B C.R.S. (1990 Supp.). This requirement is based upon constitutional principles first enunciated in *Brady. People v. District Court,* 790 P.2d 332, 337 (Colo.1990).

---

**1.** Hamrick acknowledged that he had been drinking heavily on the evening in question and that he was not certain of the basis of his knowledge for some of the details to which he testified.

**2.** There is some confusion in Hamrick's testimony over whether he told the prosecutor, during their September 14 meeting, that J.J. said she was leaving with Vick. However, the trial court found Hamrick's testimony material even if that part were to be omitted.

The United States Supreme Court has held that failure to disclose to the defense evidence favorable to the accused upon request violates due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1197. As *Brady* itself demonstrates, this principle is applicable to trials in state courts under the Fourteenth Amendment. *Accord People v. Thatcher*, 638 P.2d 760, 768 (Colo.1981). In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court expanded the rule of *Brady* to hold that a prosecutor has a duty to volunteer exculpatory material to a defendant even in the absence of a specific request. *Agurs*, 427 U.S. at 107–08, 96 S.Ct. at 2399. In *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court held that the following test is applicable to the determination of materiality without regard to whether the defense specifically requested the evidence that the prosecution failed to disclose:

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

473 U.S. at 682.[3] In *Bagley* the United States Supreme Court applied the rule from *Brady* in circumstances involving failure to disclose material *impeachment* evidence. *Bagley*, 473 U.S. at 676, 105 S.Ct. at 3380 (1985); *accord People v. District Court*, 790 P.2d at 337 ("Impeachment evidence falls within the ambit of evidence favorable to the accused, and hence must be disclosed under *Brady*."); *Thatcher*, 638

P.2d at 768 ("The use of discovery material for impeachment purposes implicates the due process rights of the defendant.").

The evidence available from Hamrick was relevant to impeach certain of the testimony of J.J. The trial court found Hamrick's testimony to be material "in a constitutional sense," noting that "[w]hen you get a case of this nature and the credibility of a complainant is gauged against the credibility of the Defendant, pieces of information which support their story immediately before and immediately after the real incident, the purported criminal incident, takes on added significance." The court's ruling is supported by the record. The alleged victim, J.J., testified that she consumed only four alcoholic beverages during the course of the entire evening and that she left the bar with Vick because she could not locate her friends. Hamrick's testimony directly conflicts with these assertions. Thus, Hamrick's testimony is relevant to the issue of credibility of the key prosecution witness. Because the prosecution's case is primarily built on the credibility of that witness, there is a reasonable probability that had Hamrick's information been disclosed to the defense, the trial would have resulted in an acquittal. Hamrick's testimony, therefore, is material. *See Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383. Although the district court did not expressly apply the *Bagley* materiality standard, it is clear from the court's ruling that the standard was met.

## III.

■ We turn now to the sanction imposed. The trial court ordered payment of $19,131 to the defense attorneys by 11:30 a.m. on December 7, 1990, or the case

---

3. Justice Blackmun articulated this standard in Part III of *Bagley*, in which only Justice O'Connor joined. However, in a concurring opinion joined by Chief Justice Burger and Justice Rehnquist, Justice White joined in Parts I and II and expressly agreed with the standard as stated by Justice Blackmun in Part III. *Bagley*, 473 U.S. at 685, 105 S.Ct. at 3385 (White, J., concurring in part and concurring in judgment). Justice

White wrote separately due to disagreement with Justice Blackmun's further elaboration in Part IIIB on application of the standard to the facts in *Bagley*. *Id.* We therefore conclude that the standard as stated by Justice Blackmun reflects the opinion of the majority of the Court. We have adhered to the *Bagley* test in *People v. District Court*, 790 P.2d 332, 337–38 (Colo.1990),

would be dismissed.[4] We hold that a monetary sanction payable from public funds as a penalty for violation of Crim.P. 16 is beyond the authority of the trial court. In addition, we hold that the alternative sanction of dismissal is an abuse of discretion.

### A.

The prosecution violated Crim.P. 16(I)(a)(2) by failing to disclose potentially exculpatory information to the defense. Crim.P. 16(III)(g) provides for sanctions in case of violation of Rule 16, stating that the court may order a party who has failed to comply with the rule "to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed *or enter such other order as it deems just under the circumstances.*" Crim.P. 16(III)(g), 7B C.R.S. (1990 Supp.) (emphasis added). The defense argues that the emphasized language provides the authority for a monetary sanction payable from public funds and applied to compensate the defendant for attorney's fees incurred as a result of the violation of the discovery rule. We disagree.

An award of attorney's fees to be payable from public funds implicates sensitive budget and funding considerations, and authority to intrude into these areas is not to be lightly implied. Even when public funds are not implicated, "[t]he general rule is that absent a specific contractual, statutory, or procedural rule providing otherwise, attorney fees are generally not recoverable." *Buder v. Sartore,* 774 P.2d 1383, 1390 (Colo.1989); *accord Alyeska Pipeline Service Co. v. Wilderness Soc'y,* 421 U.S. 240, 241, 95 S.Ct. 1612, 1613, 44 L.Ed.2d 141 (1975) (rejecting the argument that at-

torney's fees can be awarded to a party acting as "private attorney general," in the absence of express authorization for fees by Congress); *Beebe v. Pierce,* 185 Colo. 34, 38, 521 P.2d 1263, 1265 (1974) (disallowing recovery of attorney fees as an item of damages in a fraud action). Statutes and court rules held to authorize a court to require a party to pay the attorney's fees of an opposing party usually do so expressly. *See, e.g.,* C.R.C.P. 3(a), 7A C.R.S. (1990) (authorizing attorney's fees to compensate the defendant when the complaint in a civil action is not filed within ten days after service); C.R.C.P. 30(g), 7A C.R.S. (1990) (authorizing attorney's fees in a civil action where the party giving notice of a deposition fails to attend, or serve a subpoena on a witness who then fails to attend); C.R.C.P. 37(a)(3), 7A C.R.S. (1990) (authorizing attorney's fees when a motion to compel discovery is made necessary by failure to respond to a discovery request and the failure to respond was not substantially justified); C.R.C.P. 37(c), 7A C.R.S. (1990) (authorizing attorney's fees when a party fails to admit the truth of a matter or genuineness of a document later proved true or genuine); C.R.C.P. 56(g), 7A C.R.S. (1990) (authorizing attorney's fees when affidavits supporting or opposing a motion for summary judgment are presented in bad faith or solely for the purpose of delay); C.R.C.P. 107(d), 7A C.R.S. (1990) (authorizing attorney's fees as part of the sanction in a contempt action); § 13–17–101, –102, 6A C.R.S. (1987 & 1990 Supp.) (authorizing "[T]he recovery of attorney fees in courts of record when the bringing or defense of an action, or part thereof (including any claim for exemplary damages), is determined to have been substantially frivolous, substantially groundless, or substantially vexatious.").[5]

and in *People v. Rodriguez,* 786 P.2d 1079, 1082 (Colo.1989).

4. As discussed above, in response to a motion for reconsideration, the trial court modified the order to require payment of $15,000 to an escrow account pending a hearing on the reasonableness of the attorney's fees.

5. We have recognized limited exceptions to the requirement of express authorization when an

award of attorney's fees is necessary to make a party whole in an action for breach of trust or breach of fiduciary duty. *Buder,* 774 P.2d at 1391; *see also Heller v. First Nat'l Bank,* 657 P.2d 992, 999 (Colo.App.1982). The rationale for granting an award to make a party whole is not applicable in a criminal action, where the goal in imposing sanctions for a discovery violation is to assure that the defendant receives a fair trial.

The requirement that attorney's fees be expressly authorized is applied with even greater rigor when an award is to be payable from public funds. Even when attorney's fees are expressly authorized, we have required some indication of legislative intent to allow such an award against the government. Thus, in *People v. Freeman*, we held that an award of attorney's fees for "a frivolous or groundless suit" under sections 13–17–101 to –106 is limited by the statutory terms to civil suits. *People v. Freeman*, 196 Colo. 238, 241, 583 P.2d 921, 923 (1978). An award of attorney's fees has been allowed against a governmental agency where a statute expressly authorizes such relief. For example, section 24–50–125.5 of the State Personnel System Act provides for fees when a government personnel action "was instituted frivolously, in bad faith, maliciously, or as a means of harassment or was otherwise groundless." § 24–50–125.5, 10B C.R.S. (1988). *See, e.g., Mayberry v. University of Colorado Health Sciences Center*, 737 P.2d 427, 430 (Colo.App.1987) (awarding attorney's fees under § 24–50–125.5 against the University of Colorado for an action taken in bad faith).

We discover nothing in the language of Rule 16 authorizing "such other order as [the court] deems just under the circumstances" as a remedy for a discovery violation that suggests that an award of attorney's fees payable from public funds is an available remedy. It is a familiar rule of construction that in the absence of some indication of contrary intent, general language following the enumeration of particular classes of persons or things is to be construed " 'as applicable only to persons or things of the same general nature or class as those enumerated.' " *Martinez v. People*, 111 Colo. 52, 57–58, 137 P.2d 690, 692–93 (1943) (quoting 59 C.J.S. § 581); *see also Colorado Common Cause v. Meyer*, 758 P.2d 153, 162 (Colo.1988). The three specific forms of relief authorized by Rule 16—an order to permit discovery, a grant of a continuance, and a prohibition of introducing into evidence the wrongfully undisclosed material—all relate to attempts to right the imbalance in the criminal trial resulting from the discovery violation. Although these remedies are characterized as "sanctions," it is clear that the remedies specifically authorized have as their principal purpose the adoption of procedures to assure that a fair trial can be conducted notwithstanding the discovery violation.

Giving consideration to the language of Crim.P. 16(III)(g) and the tradition of disallowance of attorney's fees payable from public funds absent specific authorization, we hold that a court is not authorized under that rule to award attorney's fees to a defendant in a criminal action as a remedy for a discovery violation.

### B.

■ We also conclude that the alternative remedy of dismissal is not within the discretion of the trial court under the facts of this case. We have stated that "[w]here the prosecution has failed to [reveal exculpatory evidence], the trial court has traditionally been given broad discretion in fashioning remedies." *People v. Millitello*, 705 P.2d 514, 519 (Colo.1985); *see also People v. District Court*, 656 P.2d 1287, 1293 (Colo.1983) ("The trial court has broad discretion in fashioning an appropriate remedy to protect a defendant's rights where a due process violation has denied him access to evidence."). Nevertheless, that discretion is not unlimited. "The imposition of sanctions serves the dual purposes of protecting the integrity of the truth-finding process and deterring the prosecutor and the police from [misconduct]." *People v. District Court*, 656 P.2d at 1293; *see also People v. Morgan*, 199 Colo. 237, 240, 606 P.2d 1296, 1298 (1980). In serving the purpose of protecting the truth-finding process, we have required that the sanction "be 'no more restrictive than necessary to protect the defendant's right to due process.' " *People v. District Court*, 656 P.2d at 1293 (quoting *Morgan*, 199 Colo. at 242, 606 P.2d at 1299); *see also People v. Shaw*, 646 P.2d 375, 381 n. 10 (Colo.1982). Similarly, in serving the purpose of deterrence, we have stated that "the court should impose the least severe sanction that will ensure that there is full compliance with

the court's discovery orders." *People v. District Court,* 793 P.2d 163, 168 (Colo. 1990). The exercise of discretion in fashioning a sanction " 'should take into account the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances.' " *People v. District Court,* 793 P.2d at 167 (quoting 2 C. Wright, *Federal Practice & Procedure* § 260 at 119–20 (1982)) (without emphasis as appearing in 2 C. Wright).

■ In fashioning a sanction to achieve the goal of eliminating the due process violation, a court must strive to restore as nearly as possible the level playing field that existed before the discovery violation. Only when that goal cannot be achieved is dismissal required as a remedy for the violation of due process. We upheld dismissal of charges when the prosecution had been ordered to disclose a confidential informant who witnessed the crime and might possess exculpatory evidence, and thereafter failed to make reasonable efforts to locate the informant. *People v. Rodriguez,* 645 P.2d 851, 853–54 (Colo. 1982); *see also People v. Vigil,* 729 P.2d 360, 368 (Colo.1986) (upholding dismissal of charges when prosecution refused to comply with court order to produce confidential informant for *in camera* hearing, and informant's testimony was necessary to determine the legality of arrest and subsequent seizure of evidence); *People v. Martinez,* 658 P.2d 260, 262 (Colo.1983) (same, except that only the legality of a search was at issue). We have stated, however, that "[d]ismissal is a drastic remedy to be reserved for situations where no other sanction would attain the proper result." *People v. Holloway,* 649 P.2d 318, 320 (Colo.1982). Therefore, when potential exculpatory evidence cannot be obtained even with the aid of a court order, the court may have little choice but to dismiss the charges. In such circumstances, no other remedy can cure the prejudice to the defendant. *But see People v. District Court,*

656 P.2d at 1293 (upholding a reduction in charge from first degree to second degree murder when police officers failed to preserve the victim's hands in a condition suitable for a trace metal test and that test was the only means to corroborate the defense theory that the victim held the gun).

■ In contrast, when a continuance or a recess in a trial in progress will cure the prejudice to the defendant, the trial court should go no further in crafting a sanction to address a due process violation. *People v. District Court,* 793 P.2d at 168–69. We have held that exclusion of evidence is an inappropriate sanction where exculpatory evidence, although inadvertently withheld prior to the preliminary hearing, was revealed prior to trial. *Id.* at 169. Similarly, a new trial was implicitly deemed sufficient to cure prejudice when the falsity of testimony of the complaining witness, although known to the prosecution, was not revealed to the defense during trial. *People v. Terry,* 720 P.2d 125, 130–31 (Colo.1986). In each case, the court sought to cure any prejudice to the defendant while avoiding distortion of the truth-finding process.

Keeping in mind the foregoing principles, we turn to the facts of this case. Vick's first trial resulted in a mistrial when the jury failed to reach a verdict. The existence of potentially exculpatory evidence was discovered by the defense prior to the second trial. The trial court concluded that even with the additional testimony by Hamrick, the prosecution possessed a prima facie case against Vick. The trial court could not conclude that the results of the first trial necessarily would have been different if Hamrick had testified. A continuance to allow time to interview and prepare the new witness, followed by a new trial, is sufficient to cure the prejudice to Vick. The fact that a new trial had already been made necessary because the jury could not reach a verdict obviates the necessity for any other sanction to address the discovery violation.[6]

---

6. The trial court considered the cost of the first trial as relevant in fashioning a remedy to eliminate prejudice. However, we have never held

that the cost of defense in a criminal trial deprives a party of due process unless the cost prevents the defendant from obtaining counsel.

Because the continuance resulting from the mistrial remedies the due process violation, dismissal can be considered within the trial court's discretion only if necessary to fulfill the second goal of the sanction, deterrence of improper police conduct. In selecting a sanction that will deter misconduct, it is first necessary to consider the culpability of the prosecution. We have stated that lack of a willful violation by the prosecution "was not a defense to the charge of a discovery violation, but it was a consideration in fashioning an appropriate remedy." *People v. District Court*, 793 P.2d at 167; *see also People v. District Court*, 656 P.2d at 1292 n. 11 ("The good faith or bad faith of the police in suppressing evidence is not determinative in the decision whether a due process violation has occurred.... [H]owever, prosecutorial good faith is significant in selection of the appropriate sanction for a due process violation."); *Shaw*, 646 P.2d at 381 n. 10 ("the degree of governmental culpability involved in the loss or destruction of the evidence and the need to deter such conduct in the future" are factors in fashioning a remedy).

The trial court found that the prosecution's failure to disclose exculpatory evidence was not willful. We will uphold the factual findings of the trial court if they are supported by competent evidence in the record. *See, e.g., Rodriguez*, 645 P.2d at 853 (trial court's determination of whether prosecution has made reasonable efforts to maintain contact with an informant is a factual finding and will not be disturbed absent an abuse of discretion); *People v. Butcher*, 194 Colo. 22, 24, 568 P.2d 1169, 1170–71 (1977) (when evidence in the record supports trial court's finding that actions by the prosecution to locate an informant were not reasonable, that determination will not be overturned on review).

The prosecutor, Leslie Hansen, testified that she did not consider Hamrick's testimony of value. She questioned his credibility and considered his testimony cumulative to that of both J.J. and Susie Anderson. She further testified that the misspelling of Hamrick's name on the Supplemental List of Witnesses and her later failure to correct it were inadvertent. Although the defense disputed Hansen's credibility, the trial court was entitled to believe her testimony. Thus, the trial court's finding of lack of willful violation by the prosecution is supported by the record and will not be disturbed on review.

■ Although dismissal is occasionally necessary to prevent an unfair trial (see Part IIIA), a court must be most cautious in employing that remedy solely as a deterrent to improper conduct by the prosecution. Dismissal of criminal charges for reasons other than the inability of the prosecution to prove them is a highly serious consequence, justifiable only in furtherance of the most important principles. Even if such a severe sanction might be appropriate in some cases of willful misconduct, it is certainly beyond the discretion of the trial court where, as here, the conduct was unintentional.

In most cases a new trial, necessary to cure prejudice to the defendant, will also serve to deter improper conduct that is unintentional. We are cognizant of the fact that the unusual posture of this case— i.e., that a new trial was already necessary due to the failure of the jury to reach a unanimous verdict—left the trial court with few alternatives to ensure deterrence. Although inadvertent, incidents of failure to disclose exculpatory evidence could be reduced by improved checks on the procedures used by a particular prosecutor. Thus, deterrence retains a role when the violation is not willful. Nevertheless, the fact that the unusual circumstances of this case preclude imposition of a new trial as a sanction is insufficient to warrant the extreme alternative penalty of dismissal im-

*See Allen v. People*, 157 Colo. 582, 590–91, 404 P.2d 266, 271 (1965) (indigent criminal defendant has the right to appointment of counsel); *accord Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). The remedy in that case is for the court to appoint counsel. *Id.* In a broad sense it may be deemed unfair for an innocent party to bear the cost of defense, but we have never considered this feature of the criminal justice system to violate due process.

posed by the trial court. On remand the trial court is not precluded from adopting a sanction less severe than dismissal if, in its discretion, it deems such a sanction necessary to further the goal of deterrence of discovery violations.

## IV.

We hold that the trial court was not authorized to impose a monetary sanction payable from public moneys and that it abused its discretion in ordering dismissal as an alternative remedy for the unintentional violation of Rule 16. We therefore make the rule absolute, and remand for further proceedings consistent with this opinion.