23CA1433 Peo v Davis 02-12-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1433
Arapahoe County District Court No. 21CR2273
Honorable David N. Karpel, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Matthew J. Davis,

Defendant-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE BERGER*
J. Jones and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

---

Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Robin Rheiner, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, Matthew J. Davis, appeals the district court's order revoking his probation and resentencing him to the custody of the Department of Corrections (DOC).  We affirm.

I.    Facts and Procedural History

¶ 2    In May 2022, Davis pleaded guilty to one count of second-degree assault (strangulation), as an act of domestic violence in violation of section 18-3-203(1)(i), C.R.S. 2025.  The district court sentenced him to five years in the custody of the DOC but suspended the prison sentence on condition of successful completion of five years' probation.  The court ordered that the initial portion of the probation sentence be served in community corrections.  Davis was placed in community corrections at the Arapahoe Community Treatment Center (ACTC).  ACTC then referred Davis to the Embrave Intensive Residential Treatment Program (Embrave), a specialized residential facility for substance abuse treatment.

¶ 3    A few weeks before Davis's expected discharge from treatment, Embrave notified his probation officer that he had been terminated

from the program due to "safety concerns" over his "continued use and purchase of acid."[1]

¶ 4 Davis's probation officer then filed a complaint for revocation of probation with the court, alleging that he violated terms and conditions of his probation by (1) using and purchasing "acid" and (2) failing to successfully complete his sentence in community corrections.

¶ 5 The complaint for revocation of probation alleges that the following terms were conditions of Davis's probation:

¶ 6 The terms related to "Count 1" state: "I will not use alcohol (to excess), use or possess any controlled substances without a prescription or in a manner that is inconsistent with a prescription, or use any illegal, dangerous or abusable drugs or substances."

¶ 7 The terms related to "Count 2" provide: "You will abide by, participate in, cooperate with[,] . . . and successfully complete the

---

[1] During the revocation hearing, the prosecution did not establish what exactly "acid" meant but did present evidence that, whatever it was, Davis possessed a controlled or prohibited substance. As best as we can determine, "acid" is a slang term for "lysergic acid diethylamide" (LSD). Merriam-Webster Dictionary, https://perma.cc/Z526-KZQZ. Because Davis concedes that "acid" is a controlled or prohibited substance, we do not further address this record deficiency.

following as indicated: Sentence to be served in Community Corrections."

¶ 8 Two witnesses testified during the revocation hearing: Davis's probation officer and his therapist at Embrave. The district court found that Davis violated the terms of his probation by possessing and using acid while receiving treatment at Embrave. The court then sentenced him to DOC custody for five years with 640 days of presentence confinement credit.

¶ 9 Davis raises three issues on appeal. First, he argues that the district court abused its discretion and violated his due process rights by revoking his probation without sufficient evidence to do so. Second, he contends that the district court violated his rights to due process because he never received written notice of the terms and conditions of his probation, as required by statute. Third, he asserts that the district court erred by admitting and relying on privileged information from his therapist at Embrave without a waiver of the statutory therapist-client privilege. We address each argument in turn.

## II. Sufficiency of the Evidence

¶ 10    Davis argues that the evidence was insufficient to warrant revocation of his probation.  Specifically, he contends that (1) the district court based its conclusion that Davis used acid solely on the therapist's testimony; and (2) the prosecution did not prove that he had been discharged from community corrections, only that he had been discharged from Embrave.  Although the question is close, we reject these arguments.

### A. Applicable Law and Standard of Review

¶ 11    During a probation revocation proceeding, the district court must decide whether the defendant violated a valid condition of his probation and, if so, the appropriate action in light of the violation. *People v. Ickler*, 877 P.2d 863, 866 (Colo. 1994).  When, as here, the People do not formally charge the defendant with a criminal offense, the prosecution has the burden of establishing the violation by a preponderance of the evidence.  § 16-11-206(3), C.R.S. 2025; *People v. Howell*, 64 P.3d 894, 896 (Colo. App. 2002).  No criminal charges were filed against Davis premised on his alleged use of a controlled substance.

¶ 12     Therefore, we consider whether the evidence is sufficient to satisfy the prosecution's burden of establishing the alleged probation violations by a preponderance of the evidence.  If the evidence sufficiently supports the district court's finding of a violation, "we will not substitute our judgment for that of the trial court."  *People v. Moses*, 64 P.3d 904, 908 (Colo. App. 2002).  The district court is in a better position to weigh evidence than we are.  *People v. Trujillo*, 539 P.2d 1234, 1236 (Colo. 1975).  In making a sufficiency of the evidence determination, we consider all evidence admitted by the district court without regard to whether some evidence was improperly admitted.  *People v. Hard*, 2014 COA 132, ¶ 39.

     B.     The Evidence was Sufficient to Prove a Probation Violation

¶ 13     Davis argues that there is insufficient evidence to establish that he used acid (Count 1) and to prove that he was discharged from community corrections (Count 2).

¶ 14     Regarding Count 1, Davis argues that (1) no evidence established how he acquired the acid he was accused of using, and (2) the district court misconstrued testimony from the therapist and erroneously concluded that he admitted to using acid.

5

¶ 15     The complaint for revocation of probation alleged Davis's "use

*and* purchase of acid."  (Emphasis added.)[2]  Davis takes issue with

the district court's finding that he "made an admission to [the

therapist] that he did possess and he did use acid while at the

facility."  Davis claims that finding is clearly erroneous because the

therapist never testified that Davis admitted that he *used* acid.

¶ 16     The People seem to concede that certain portions of the district

court's findings were erroneous — specifically, that the district

court misconstrued evidence in finding that Davis admitted to his

therapist that he used acid while at Embrave.  We note that the

questions asked by the prosecutor at the revocation hearing were

imprecise, leading to imprecise and ambiguous answers by the

witnesses.  This imprecision likely led to the district court's

misstating, as the People put it, of some of the therapist's

testimony.

¶ 17     But while the court may have misconstrued a portion of the

therapist's hearing testimony, the record otherwise supports its

finding that Davis used acid.  At the revocation hearing, when the

_____

[2] We note that the terms of Davis's probation provide that either use
*or* possession would constitute a violation.

6

prosecutor asked the therapist if she had "receive[d] information that [Davis] had utilized or possessed controlled substances, specifically acid," the therapist responded, "Yes." And when the prosecutor asked the therapist if she had "received information that [Davis] had either used or possessed acid specifically," she, again, responded, "There were reports from other clients that that was occurring within the facility."

¶ 18    We therefore conclude that the record supports, and we can't disturb, the district court's finding that Davis used or possessed a controlled substance, in violation of terms and conditions of his probation. *See Howell*, 64 P.3d at 897 ("A finding that a probationer has violated a condition of probation will not be disturbed merely because there is a conflict in the evidence.").

¶ 19    Regarding Count 2, Davis argues that the People failed to establish that his termination from the Embrave treatment facility resulted in an inability for him to remain in community corrections as a whole. Again, because of the deficiencies in the presentation made by the prosecution, the question is close, but we reject Davis's argument.

¶ 20    Davis's initial sentence was suspended on successful completion of five years' probation, with the initial portion to be served residentially in community corrections.  The sentencing judge told Davis:

> [H]aving you do probation with Community Corrections as a condition of probation, hopefully gets you the therapy you are telling everybody you want.  And I want to make sure that we're very clear.  If there is a single violation on probation and they come back with a complaint to revoke your probation, it will be revoked and you will serve the five years in prison.

¶ 21    During the revocation hearing, Davis's therapist testified that "Embrave is a Community Correctional facility" and is "an intensive residential treatment program."  The district court concluded that treatment at Embrave was an "integral part" of Davis's probation and that he violated his probationary sentence by being terminated for safety concerns for himself and others.

¶ 22    Our review of the record shows that Embrave terminated Davis from its facility, and because he was terminated, he could not and did not successfully complete his community corrections sentence.  Thus, we conclude that the evidence was also sufficient to sustain Count 2 of the complaint for revocation of probation.

## III. Notice of Terms and Conditions of Probation

¶ 23    Davis next argues that the district court violated his due process rights by revoking his probation without written or actual notice of the terms and conditions of his probation.

### A. Standard of Review and Applicable Law

¶ 24    We review de novo whether there was a violation of a defendant's right to due process. *Quintano v. People,* 105 P.3d 585, 592 (Colo. 2005); *People v. Nave,* 689 P.2d 645, 647 (Colo. App 1984).

¶ 25    A defendant must receive written notice of the conditions of his probation. § 18-1.3-204(3), C.R.S. 2025; *People v. Calderon,* 2014 COA 144, ¶¶ 22-24. However, actual notice is an adequate substitute, and the lack of written notice is harmless if the defendant had actual notice of the terms and conditions of his probation. *Calderon,* ¶ 24; *People v. Zimmerman,* 616 P.2d 997, 999 (Colo. App. 1980).

### B. Davis Had Actual Notice of the Terms and Conditions

¶ 26    It is undisputed that Davis did not receive written notice of the conditions of his probation, and the district court so found. Our analysis addresses whether Davis received actual notice of his

probationary terms.  Davis argues that he never received actual notice either, including actual notice about abstaining from alcohol and drugs as a condition of his probation.  However, during the sentencing hearing, Davis was sentenced to probation with community corrections, and the district court stated the following:

- "Conditions of probation are that you complete the residential portion of Community Corrections, *that you comply with substance abuse treatment*, domestic violence treatment, that you pay restitution . . . ." (Emphasis added.)
- "I recognize that people with substance abuse problems take a while before they get around to the point where they realize, I need help, and they're willing to accept the help.  So this is your only shot."
- "[H]opefully [this] gets you the therapy you are telling everybody you want."
- "I want to make sure that we're very clear.  If there is a single violation on probation and they come back with a complaint to revoke your probation, it will be revoked and you will serve the five years in prison."

¶ 27    During the revocation hearing, the district court found that it was "common sense" that a defendant could not use or possess alcohol or drugs while on probation and while receiving substance abuse treatment.  The district court also found that Davis had actual notice that he could not possess drugs or alcohol while receiving substance abuse treatment at Embrave because he was advised of Embrave's facility rules.  Because we conclude that these findings have record support, we cannot disturb them.  As a result, the revocation order did not violate Davis's right to due process of law.

## IV.    Therapist-Client Privilege

¶ 28    Lastly, Davis contends that the district court erred by admitting and relying on privileged information from his therapist without a waiver of the statutory privilege.

### A.    Applicable Law and Standard of Review

¶ 29    Section 13-90-107(1)(g), C.R.S. 2025, provides that a licensed therapist or counselor "shall not be examined without the [client's] consent" regarding "any communication made by the client" to the therapist.  This privilege, known as the therapist-client privilege,

11

protects covered communications from disclosure or use against the holder of the privilege. *See L.A.N. v. L.M.B.*, 2013 CO 6, ¶ 15.

¶ 30    The therapist-client privilege was created to preserve confidence and trust in the therapist so that the patient may "make a frank and complete disclosure of facts, emotions, memories, and fears," necessary for effective therapy and counseling. *Id.* at ¶ 14 (citation omitted). "Disclosing information obtained during therapy sessions could damage the trust the patient has for the therapist and for the therapeutic process generally." *Id.* at ¶ 33. Once the privilege attaches, disclosure of that information cannot be compelled by a court or used by a court to the prejudice of the privilege holder, unless the privilege holder waives the privilege. *Hoffman v. Brookfield Republic, Inc.*, 87 P.3d 858, 863 (Colo. 2004).

¶ 31    A waiver occurs if, "by words or conduct," the patient "expressly or impliedly forsake[s] his claim of confidentiality with respect to the information in question." *Clark v. Dist. Ct.*, 668 P.2d 3, 8 (Colo. 1983). Because the therapist-client privilege protects those relationships specified by statute, it does not protect the disclosure of information that an individual transmits outside of the

statute's specified relationships.  *Cf. Hartmann v. Nordin,* 147 P.3d 43, 49 (Colo. 2006).

¶ 32     The burden of demonstrating a waiver of the therapist-client privilege rests with the party seeking to overcome the privilege. *Alcon v. Spicer,* 113 P.3d 735, 739 (Colo. 2005).  But the privilege holder must first meet the threshold requirement of proving that the privilege applies as provided by statute.  *Hartmann,* 147 P.3d at 49.

## B.     No Violation of the Privilege Occurred

¶ 33     During the hearing, the prosecutor called Davis's treatment therapist to testify.  Defense counsel timely objected on the grounds that the testimony from the therapist was privileged.  The prosector responded by saying that the therapist would testify to the factual reasons for Davis's discharge only.  The district court then overruled the objection.

¶ 34     Later during the hearing, defense counsel renewed the therapist-client privilege objection when the prosecutor asked the therapist, "Did you at any point receive information that the Defendant had utilized or possessed controlled substances, specifically acid?"  The district court again overruled the objection and the therapist answered, "Yes."

¶ 35    The prosecutor then asked the therapist, "[W]ere you present for a conversation where Mr. Davis admitted to possessing acid?" Defense counsel objected on the same grounds, and the district court again overruled the objection. The therapist then testified that "[t]here were reports from other clients that that was occurring within the facility," and Embrave clients, including Davis, were gathered "into a staffing" where Davis "openly admitted to possessing" acid.

¶ 36    Davis argues that the statutory privilege applied to the therapist's testimony and the district court abused its discretion by admitting the therapist's testimony without a sufficient waiver. For three reasons, we reject Davis's contentions.

¶ 37    First, the therapist testified that there were reports from other clients of the facility that Davis at least possessed acid. Possession alone was a probation violation. These reports by other clients are not subject to the privilege.

¶ 38    Second, Davis did not establish that the privilege applied to communications in the staff meeting. While it would be the prosecution's burden to establish a waiver of the privilege, *Alcon*, 113 P.3d at 739, it was Davis's burden to establish the applicability

14

of the privilege in the first instance, *see Hartmann,* 147 P.3d at 49.
Davis didn't do so because the mere presence of the therapist at a
meeting doesn't automatically establish that the communications
made at the meeting were subject to the privilege.

¶ 39     Third, we conclude that the presence of third-party clients,
administrative staff members, and the therapist at the staff meeting
constituted an implied waiver of any otherwise privileged
communications.  Although the "mere presence of a third party
does not immediately waive the [therapist-client] privilege," *People v.
Covington,* 19 P.3d 15, 20 (Colo. 2001), the presence of persons who
are not necessary for consultation to occur does constitute a waiver
of the privilege, *D.A.S. v. People,* 863 P.2d 291, 295 (Colo. 1993).  As
noted above, Davis made no showing that the presence of multiple
people at the staff meeting was necessary for a privileged
consultation to occur.

¶ 40     While we acknowledge that the district court made no findings
of whether the presence of persons other than Davis and the
therapist were necessary to facilitate the privilege, the record
permits only one conclusion: Any privilege was impliedly waived by

the presence of numerous administrative staff members and other Embrave clients.

¶ 41 For these reasons, the district court did not abuse its discretion in admitting the therapist's testimony that Davis used or possessed acid in violation of his probationary terms.

## V. Disposition

¶ 42 The order revoking Davis's probation is affirmed.

JUDGE J. JONES and JUDGE MEIRINK concur.