Jon HARTMANN and Pamela Hartmann, Plaintiffs

v.

John Robert NORDIN, M.D.; David A. Connett, D.O.; Deborah Hunter, N.P.; Rocky Mountain Health Centers of Lakewood, P.C.; Anthony L. Valenti, D.P.M.; Allied Foot & Ankle Clinics of Colorado, P.C.; and Jeffrey Gunter, M.D., Defendants.

No. 06SA51.

Supreme Court of Colorado, En Banc.

Nov. 13, 2006.

**44**

Leventhal, Brown & Puga, P.C., Jim Leventhal, James E. Puga, Daniel A. Lipman, Denver, Colorado, Attorneys for Plaintiffs.

Johnson, McConaty & Sargent, P.C., Thomas J. Kresl, Andrew W. Jurs, Glendale, Colorado, Jaudon & Avery LLP, David H. Yun, Denver, Colorado, Attorneys for Defendant John R. Nordin, M.D.

No appearance by or on behalf of defendants David A. Connett, D.O.; Deborah Hunter, N.P.; Rocky Mountain Health Centers of Lakewood, P.C.; Anthony L. Valenti, D.P.M.; Allied Foot & Ankle Clinics of Colorado, P.C.; and Jefferey Gunter, M.D.

Montgomery, Little, Soran, Murray & Kuhn, P.C., Amy E. Cook–Olson, Greenwood Village, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Office of University Counsel, Patrick T. O'Rourke, Special Assistant Attorney General, Denver, Colorado, Budman, Mastin & Hershey, LLC, Kari M. Hershey, Denver, Colorado, Attorneys for Amicus Curiae Board of Regents of the University of Colorado.

Justice HOBBS delivered the Opinion of the Court.

Pursuant to C.A.R. 21, we exercised jurisdiction over this original proceeding to determine whether plaintiffs in a medical malpractice action may assert the physician-patient and spousal privileges to prevent defense deposition questions regarding their own and their close family members' medical history that bears upon the injuries and damages that are at issue in this lawsuit.[1]

---

**1.** The petition for a rule to show cause stated the following issues:

1. Does a typical, generic claim for loss of consortium constitute an implied waiver of the physician-patient privilege of the spouse asserting the consortium claim?

2. Are the medical conditions of Pamela Hartmann's family members privileged when the family members are not involved in the lawsuit? Is such information acquired by Jon Hartmann from Pamela Hartmann during the course of their marriage protected by the spousal privilege in C.R.S. § 13–90–107(1)(a)(I)?

We cite to the 2006 edition of the Colorado revised statutes as they are unchanged in any material respect from the statutes in effect when the deposition questions were first asked.

The plaintiff/wife in the underlying medical malpractice action, Mrs. Hartmann, is incapacitated. Her husband, Mr. Hartmann, maintains this lawsuit in her name as guardian and conservator, pursuant to a ruling of the probate court, and in his own name for loss of consortium.

The district court ruled that Mrs. Hartmann could not be deposed because of her incapacity. The defense then turned to a deposition of the husband. When defense counsel asked the Mr. Hartmann deposition questions related to his wife's medical history and his own medical history, plaintiffs' counsel instructed Mr. Hartmann not to answer them.

The medical malpractice complaint in the underlying lawsuit alleges that Mrs. Hartmann suffered a stroke based on misdiagnosis and consequent lack of treatment due to the negligence of her personal physician and medical personnel defendants. Plaintiffs contend that the physician-patient and spousal privileges prevent her husband from testifying about the medical history of his wife's close family members. As part of its motion to compel, the defense cited and included medical literature that related such inherited conditions to increased risk of stroke. As to his consortium claim, Mr. Hartmann also asserts the physician-patient privilege in regard to deposition questions about his own medical condition.

The district court issued an order compelling answers to deposition questions bearing on Mrs. Hartmann's family medical history and Mr. Hartmann's health and ability to care for his wife. The order is restricted to (1) Mr. Hartmann's knowledge of his wife's family history of diabetes, heart disease, and clotting conditions and (2) his own health and ability to care for his wife. This order provides, in pertinent part:

> [T]hat Plaintiffs must make Plaintiff Jon Hartmann available to Defendants within twenty (20) days, at a time convenient to

all listed parties to the lawsuit, for additional deposition questioning on issues of: Pamela Hartmann's family history of diabetes, heart disease, and clotting conditions, Jon Hartmann's health and ability to care for Pamela Hartmann . . . and any reasonable follow up questions resulting from the questioning.

We hold that Colorado's physician-patient privilege, section 13–90–107(1)(d), C.R.S. (2006) does not shield Mr. Hartmann from being deposed in accordance with the district court's order in regard to "Pamela Hartmann's family history of diabetes, heart disease, and clotting conditions." Mrs. Hartmann's medical condition is relevant to legitimate theories of defense to the medical malpractice claims she makes in this case. She impliedly waived her physician-patient privilege in regard to such information by directly placing at issue the cause of her stroke in claiming that defendants' malpractice caused it. However, the district court erred in compelling answers to deposition questions concerning "Jon Hartmann's health and ability to care for Pamela Hartmann." Mr. Hartmann's health and ability to care for his wife are not relevant to Mrs. Hartmann's medical malpractice claim. Thus, the second part of the district court's order compelling deposition answers cannot stand.

We do not address the spousal privilege issue because plaintiffs' response to defendants' motion to compel did not invoke the spousal privilege; thus, the district court did not consider it, nor will we in this original proceeding reviewing the alleged district court abuse of discretion. We do not address Mr. Hartmann's loss of consortium claim because the language of the district court's order does not clearly compel discovery of his medical history as it pertains to the loss of consortium claim.[2]

---

**2.** Mr. Hartmann argues before us that loss of consortium is a generalized claim; is derivative of the medical malpractice claim; is subject to *Alcon v. Spicer* analysis and protections; and bringing such a claim does not constitute an implied waiver of the physician-patient privilege. *See* 113 P.3d 735 (Colo.2005). The defense counters that Mr. Hartmann's damages for loss of consortium may turn upon his life expectancy and must be determined by the mortality tables or, preferably, by proof that his life expectancy is less than the mortality tables. We do not decide this issue as the language of the district court's order does not deal with it.

Accordingly, we discharge the rule in part and make it absolute in part.

## I.

In 2002, a stroke rendered Pamela Hartmann unable to walk, read, feed herself, properly access her memory, or perform any number of tasks necessary for daily living. Immediately prior to and since the stroke, Jon Hartmann has acted as his wife's caregiver.

Prior to Mrs. Hartmann's stroke, she was diagnosed with diabetes and underwent surgery for neuroma on her feet. After her foot surgery, according to Mr. Hartmann's deposition testimony, Mrs. Hartmann slept no more than an hour every night and became so distressed, weak, sick, and sleep-deprived that she often lay in bed and cried.

Mrs. Hartmann's personal physician diagnosed sleep apnea, prescribed medication, and ordered various tests. This treatment failed[3] and Mrs. Hartmann's health deteriorated to the point that Mr. Hartmann personally sought help from her doctors.

The complaint in this case alleges that Mrs. Hartmann's personal physician and other defendant health professionals and organizations failed to provide her with adequate medical diagnosis and treatment. As a result she suffered a heart attack, followed by a stroke. Prior to the stroke, she suffered from an enlarged, weakened heart that could not properly evacuate blood. This condition prevented her from sleeping; blood pooled in her left ventricle; clots formed in the pooled blood; and eventually some of these clots escaped and lodged in Mrs. Hartmann's brain.

The complaint alleges that proper diagnosis and treatment could have prevented Mrs. Hartmann's stroke. Claims for damages are based on negligence, vicarious liability, loss of consortium, and lack of informed consent.

The defense contends that Mrs. Hartmann's heart disease and stroke resulted from hereditary conditions that run in her family.[4] These involve diabetes, heart disease, and blood clotting conditions. Defense counsel posed the following indicative questions about Mrs. Hartmann's brother's, father's, and mother's health history:

Q. Do you know how [Mrs. Hartmann's brother's] health is? Does he have any history of heart disease?

. . .

Q. A history of diabetes, does he have a history of diabetes?

. . .

Q. With respect to Mrs. Hartmann's father, do you know whether or not he had a history of diabetes?

. . .

Q. With respect to her mother, does she have diabetes?

. . .

Q. Does she have a history of heart disease or heart attacks?

Invoking the physician-patient privilege of the family members, Mr. Hartmann's attorney instructed him not to answer such questions because counsel was "not going to have [his] client put in a position where another party is upset with him because he waived the privilege or he disclosed information that he wasn't under a release or—or that he had the ability to disclose."

Defense counsel also asked Mr. Hartmann about his own medical history and conditions, asking such questions as:

Q. Do you have any significant medical conditions which would have any impact on—on your future life expectancy?

. . .

Q. [D]o you feel like you're in good enough health now to take care of your wife into the foreseeable future?

Invoking Mr. Hartmann's physician-patient privilege, his counsel instructed him not to answer such questions.

---

**3.** According to Mr. Hartmann, the medication prescribed by Mrs. Hartmann's physician helped her to sleep but caused a severe allergic reaction.

**4.** The record in this original proceeding includes articles about a number of studies that relate the significance of hereditary genetic traits predisposing a person to stroke.

Defendants filed a motion to compel Mr. Hartmann to answer questions regarding his knowledge of Mrs. Hartmann's family history of diabetes, heart conditions, and blood clotting disorders, as well as questions regarding Mr. Hartmann's general health and life expectancy.[5] The defense included with its motion to compel medical literature focusing on the "systematic collection and interpretation of family history information" as the "most appropriate screening device to identify individuals with genetic susceptibility" to cardiovascular disease (CAD) and myocardial infarction (MI). An example is the following:

Family history of CAD is a significant risk factor for CAD. On average, there is a two to three fold increase in risk for CAD in first-degree relatives of affected individuals. Having two or more first-degree relatives with CAD is associated with a three to six fold increase in risk. The earlier the age of onset, the greater is the risk of CAD to relatives. In addition, the risk of disease is typically greater in relatives of female cases compared with male cases, suggesting greater genetic burden in female cases.

* * *

There are more than 30 mendelian disorders (single-gene disorders) that feature CAD or MI. Genetic tests for many of these mendelian disorders are available and include DNA-based tests and biochemical analyses. These conditions generally are associated with a substantial risk for CAD and MI at young ages. For most of these mendelian disorders, personal and family history characteristics are crucial for identifying individuals at risk. Specifically, early-onset CAD is usually present in multiple family members, and family members may have associated conditions, such as stroke, diabetes, thrombophilia, or cholesterol abnormalities. Collection and interpretation of family medical history is central to providing access to genetic testing services that are available for diagnosis of mendelian forms of CAD and MI.

Maren T. Scheuner, MD, MPH, *Clinical Application of Genetic Risk Assessment Strategies for Coronary Artery Disease: Genotypes, Phenotypes, and Family History,* 31 Primary Care: Clinics in Office Practice 3, 2–3, 6–7 (Sept.2004) (footnotes and tables omitted).

The district court found the physician-patient privilege inapplicable to (1) Mr. Hartmann's testimony about his wife's close family history of diabetes, heart disease, and clotting conditions and (2) his own health and ability to care for his wife. Mr. Hartmann then commenced this original proceeding.

## II.

We hold that Colorado's physician-patient privilege, section 13–90–107(1)(d) does not shield Mr. Hartmann from being deposed in accordance with the district court's order in regard to "Pamela Hartmann's family history of diabetes, heart disease, and clotting conditions." Mrs. Hartmann's medical condition is relevant to legitimate theories of defense to the medical malpractice claims she makes in this case. She impliedly waived her physician-patient privilege in regard to such information by directly placing at issue the cause of her stroke in claiming that defendants' malpractice caused it. However, the district court erred in compelling answers to deposition questions concerning "Jon Hartmann's health and ability to care for Pamela Hartmann." Mr. Hartmann's health and ability to care for his wife are not relevant to Mrs. Hartmann's medical malpractice claim. Thus, the second part of the district court's order compelling deposition answers cannot stand. Accordingly, we discharge the rule in part and make it absolute in part.

## A.

### Standard of Review

■ C.A.R. 21 is the basis for our discretionary review of district court discovery orders when the petitioner alleges the applicability of a privilege that may shield disclosure of the requested information. *Weil v. Dillon*

---

5. The motion to compel also asked the trial court to compel Mr. Hartmann to answer several questions he declined to answer because of attorney-client privilege. These questions are not part of the dispute before this Court, and we do not address them.

*Cos.,* 109 P.3d 127, 129 (Colo.2005); *Samms v. Dist. Court,* 908 P.2d 520, 524 (Colo.1995). Our review focuses on an alleged abuse of discretion by the district court. *Alcon v. Spicer,* 113 P.3d 735, 741 (Colo.2005).

Under C.R.C.P. 26(b)(1), parties may obtain discovery of any matter, not privileged, that is relevant to the claim or defense of any party. However, when it is applicable, the statutorily-stated physician-patient privilege operates as an exception to Colorado's broad discovery rules. *Id.* at 738 (discussing privileges encoded in section 13–90–107 as exceptions to C.R.C.P. 26(b)(1)). Conversely, when the asserted privilege is not applicable under the circumstances of the case, because the matter is not privileged or the holder of the privilege has waived it expressly or impliedly, the district court does not abuse its discretion when its discovery order is properly based on the relevancy of the information to a claim or defense.

In construing statutes, we seek to effectuate the intent of the legislature, starting with a plain reading of the statutory language. *People v. Cross,* 127 P.3d 71, 73 (Colo.2006). The legislature's stated goal for the physician-patient privilege is to protect the utility and privacy of certain legally-recognized relationships by shielding communications that are made within those relationships. *See* § 13–90–107(1), C.R.S. (2006) (introducing physician-patient privileges with statement that "[t]here are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate").

Because it withholds potentially relevant information, we narrowly construe the physician-patient privilege. The burden to establish applicability in the first instance belongs to the party who asserts it. *See People v. Turner,* 109 P.3d 639, 644 (Colo. 2005); *see also In re Marriage of Bozarth,* 779 P.2d 1346, 1349–50 (Colo.1989); *Petro–Lewis Corp. v. Dist. Court,* 727 P.2d 41, 43 (Colo.1986); *People v. Covington,* 19 P.3d 15, 19 (Colo.2001) (stating that physician-patient privilege is narrowly construed).

**B.**

**Physician–Patient Privilege and Waiver**

The physician-patient privilege, section 13–90–107(1)(d), provides that:

A physician, surgeon, or registered professional nurse duly authorized to practice his profession pursuant to the laws of this state or any other state shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient. . . .

The physician-patient privilege is not a blanket protection against the disclosure of any and all medical information. Rather, it protects the relationship between patients and the doctors, surgeons, and registered nurses they consult for medical treatment. *Alcon,* 113 P.3d at 738 ("[T]he privilege can also be viewed as recognizing the inherent importance of privacy in the physician-patient relationship by protecting the confidences once made.").

Because the physician-patient privilege protects those relationships specified by statute, it does not protect medical information that a party transmits outside of the statute's specified relationships. *See Belle Bonfils Mem'l Blood Ctr. v. Dist. Court,* 763 P.2d 1003, 1009 (Colo.1988) (holding that information given to medical technicians regarding risk factors for infection with HIV technicians prior to donation of blood was not privileged). For example, the physician-patient privilege is not available when a party reveals his physical or medical state to third persons. *People v. Deadmond,* 683 P.2d 763, 771 (Colo.1984) (holding that "defendant's abusive language, loud demeanor and offensive behavior, directed at and readily observed and heard by anyone who might be present in the emergency room" is not privileged); *accord Covington,* 19 P.3d at 20 ("When a communication between a physician and a patient takes place in the presence of a third party, not only may the third person testify as to the communication, but if it is plain that the patient did not intend what was said or done to be confidential, the physician may testify.").

Because the physician-patient privilege is limited to the physician-patient relationship, it is not available to protect information when disclosure does not jeopardize the relationship's utility. *Id.* at 19 (reiterating from section 13–90–107(1)(d) that the privilege applies only when "information acquired by the physician is necessary for the physician to 'act or prescribe for the patient' "). Thus, we have held that the privilege does not generally apply to names, phone numbers, and other identifying information, because doctors do not need that information to prescribe or act on behalf of patients. *Belle Bonfils Mem'l Blood Ctr.,* 763 P.2d at 1009.[6]

Holders of the physician-patient privilege may explicitly or implicitly waive it. *Weil,* 109 P.3d at 129. A patient implicitly waives the physician-patient privilege when he or she injects "his physical or mental condition into the case as the basis of a claim or an affirmative defense." *Clark v. Dist. Court,* 668 P.2d 3, 10 (Colo.1983).

But, an implied waiver does not grant adverse parties access to the entirety of one's medical history: "[I]mplied waivers have always been limited by the circumstances of the case, rather than amounting to consent to general disclosure of all the patient's communications with his or her physician." *Alcon,* 113 P.3d at 739. In *Samms v. District Court,* we stated that "[t]he scope of any implied waiver necessarily depends on the nature of the claim asserted by the patient." 908 P.2d at 529.

In *Alcon v. Spicer,* we addressed whether a claim for future damages waives the physician-patient privilege for a wide range of medical records. 113 P.3d at 741. We held that a person who claims future damages does not waive, in blanket fashion, his physician-patient privilege for ten years of pharmaceutical records and complete patient records. *Id.* A tenet of *Alcon v. Spicer's*

reasoning recognizes there are other ways to obtain the relevant medical information without examining a health professional or obtaining the medical records: "[T]here are many means available to Spicer to learn information having an impact on Alcon's life expectancy without intruding into Alcon's private relationships with her physicians, such as through interrogatories or asking Alcon to submit to a C.R.C.P. 35 physical examination." *Id.*

In *Clark v. District Court,* even when privilege forecloses the discovery of a party's addiction treatment records, we recognized that discovery regarding the party's addiction is still possible:

> While admittedly our construction of the Colorado privilege statutes prohibits a party from controverting the claim or defense of the opposing party by discovery of privileged information, *there is nothing in our construction to preclude the litigant from controverting his opponent's claim or defense by evidence, both direct and circumstantial, which falls outside the scope of the privilege.* C.R.C.P. 35(a), for example, authorizes the court upon a showing of good cause to order a party to submit to a physical or mental examination when the physical or mental condition of the party 'is in controversy.'

668 P.2d at 9 n. 6 (emphasis added).

There, we stated that discussing medical treatment in response to deposition questions does not waive a party's physician-patient privilege for disclosure of the treatment: "Clark's deposition testimony admitting the general nature of his prior treatments was in response to questions by opposing counsel and does not indicate intent on his part to forego any claim of confidentiality attaching to the treatment records...." *Id.* at 8 n. 5. Likewise, a plaintiff who in response to discovery describes particulars of her mental anguish does not inject her mental state into a personal injury suit. *Hoffman v. Brook-*

6. The physician-patient privilege does not protect information disclosed to a doctor consulted in preparation for litigation rather than medical treatment. *B.B. v. People,* 785 P.2d 132, 140 (Colo.1990). The privilege does not apply to the results of blood alcohol tests not taken for medical treatment, *Hanlon v. Woodhouse,* 113 Colo.

504, 508–09, 160 P.2d 998, 1001 (1945), and the privilege does not protect records of drug-screening and physical ability tests taken for employment purposes and stored in an employee's personnel files, *People v. Palomo,* 31 P.3d 879, 883 (Colo.2001).

*field Republic, Inc.,* 87 P.3d 858, 863–64 (Colo.2004); *see also Johnson v. Trujillo,* 977 P.2d 152, 157 (Colo.1999) (informing opposing parties of participation in marriage counseling prior to accident does not waive psychotherapist-patient privilege for the content of the counseling sessions).

## C.

### The Family History Privilege Claim in this Case

■ Mr. Hartmann brought this medical malpractice case on behalf of his wife. In its July 2005 order appointing Mr. Hartmann as his wife's guardian and conservator, the probate court specifically authorized Mr. Hartmann to pursue medical malpractice litigation on behalf of his wife and to obtain all of Mrs. Hartmann's medical records from all medical providers on behalf of his wife. The court's specific authorizations are consistent with section 15–14–425(2)(x), C.R.S. (2006), which grants conservators the power to prosecute or defend actions for protection of the assets of the estate, and section 15–14–410(1)(b), C.R.S. (2006), which grants courts the power to authorize conservators to exercise "all the powers over the estate and business affairs of the protected person that the person could exercise if the person were . . . present, and not under *conservatorship* or other protective order." (Emphasis added).

■ The right of Mr. Hartmann under the court's conservatorship order to obtain all of Mrs. Hartmann's medical records for the purpose of litigation necessarily includes (1) the right to assert her physician-patient privilege in the lawsuit, and (2) by necessary implication, the right to expressly or impliedly waive her physician-patient privilege in making the claims asserted in the lawsuit. *See People v. Palomo,* 31 P.3d 879, 885 (Colo. 2001) (holding that the physician-patient privilege is personal to the patient or her estate); *Burns v. Boyden,* 133 P.3d 370, 378 (Utah 2006) (holding that under Utah Rule of Evidence 506(c), conservators have the right to claim the physician-patient privilege of the patient); *Krueger v. Walter H.,* 195 Wis.2d 971, 537 N.W.2d 103, 112–13

(App.1995)(recognizing that a conservator or guardian may assert and waive the patient's physician-patient privilege).

■ The initial burden of establishing the applicability of the physician-patient privilege in this case rests with Mr. Hartmann. *See People v. Dist. Court,* 743 P.2d 432, 435 (Colo.1987) ("Initially, we note that statutory privileges must be strictly construed and the claimant of a privilege bears the burden of establishing the applicability of the privilege."). Once the privilege attaches, the burden shifts to the challenging party to establish waiver. *Cummings v. People,* 785 P.2d 920, 926 (Colo.1990).

We analyze this case in a waiver of the physician-patient privilege context because Mrs. Hartmann has placed her medical condition and, thus, that of her close family for diabetes, heart disease, and clotting conditions at issue. Because she has impliedly waived her physician-patient privilege in regard to such information, it is discoverable.

In accordance with C.R.C.P. 26(b)(1), *Weil,* and *Alcon v. Spicer,* we first determine whether the deposition questions the district court ordered Mr. Hartmann to answer about his wife's medical history and those of her close family members are relevant to the claim or defense of any party.

The district court compelled answers concerning Mrs. Hartmann's family history of diabetes, heart disease, and clotting conditions. Mrs. Hartmann's complaint alleges that the negligence of defendants caused her stroke and her consequent damages. The defense contends that Mrs. Hartmann's stroke was due to inherited family medical conditions manifested by her close family members.

Mrs. Hartmann bears the burden of establishing causation for her stroke in this medical malpractice action. Evidence showing that pre-existing conditions caused her stroke, not the actions or inactions of defendants, is relevant to the defense of this medical malpractice negligence case.

Colorado Civil Jury Instruction 9:1, Fourth Edition, contains the standard elements of tort liability that (1) the plaintiff suffered injuries, losses, and damages; (2) the defen-

dant was negligent; and (3) the defendant's negligence caused the plaintiff's injuries, damages, and losses.

Thus, Mrs. Hartmann must prove causation, and defendants may introduce evidence countering her contentions of injury, loss, and damages. Colorado Civil Jury Instruction 9:20, Fourth Edition, addresses concurrent and intervening causes as follows:

The word "cause" as used in these instructions means an act or failure to act that in natural and probable sequence produced the claimed injury. It is a cause without which the claimed injury would not have happened.

If more than one act or failure to act contributed to the claimed injury, then each act or failure to act may have been a cause of the injury. A cause does not have to be the only cause or the last or nearest cause. It is enough if the act or failure to act joins in a natural and probable way with some other act or failure to act to cause some or all of the claimed injury.

(One's conduct is not a cause of another's injuries, however, if, in order to bring about such injuries, it was necessary that his or her conduct combine or join with an intervening cause that also contributed to cause the injuries. An intervening cause is a cause that would not have been reasonably foreseen by a reasonably careful person under the same or similar circumstance.)

Proving that Mrs. Hartmann's stroke was caused by something other than the defendants' negligence would be a complete defense. The defendants argue that Mrs. Hartmann's pre-existing ill health, as evidenced by her family history of diabetes, heart disease, and clotting conditions, caused her stroke. Not only is her family medical history relevant to her medical malpractice claim, it is directly at issue because it tends to prove the cause of her stroke.

In issuing its motion to compel Mr. Hartmann to answer deposition questions regarding Mrs. Hartmann's family medical history, the district court had before it medical literature that supported a connection between stroke and inherited conditions such as diabetes, heart conditions, and blood clotting disorders. Those with a close family history of these conditions have an increased risk of stroke.

In suing defendants, Mrs. Hartmann placed at issue the cause of her stroke and directly placed at issue her family medical history relevant to the cause of her stroke. By its deposition questions, the defense was attempting to learn what Mr. Hartmann knew about Mrs. Hartmann's brother's, father's, and mother's history of hereditary conditions that might bear upon the causes of Mrs. Hartmann's stroke.

Family medical histories are routinely taken without obtaining the express waiver of the close family members whose information is disclosed. Every person who applies for insurance or medical evaluation and assistance is familiar with questions that include family history medical conditions. Persons routinely answer such questions without having to obtain the consent of their close family members. The reason these questions are routinely asked and answered is that they are relevant to a person's own health as affected by heredity. In releasing medical records, the patient's authorization is sufficient under our statutes, which do not require that a release be obtained from family members when information pertaining to them exists in the patient's record. §§ 25-1-801(1)(a), 25-1-802(1)(a)-(b), C.R.S. (2006).

The district court did not err in determining that the close family member medical history for diabetes, heart conditions, and blood clotting disorders is relevant to the defense of the causation and damages claims Mrs. Hartmann makes in this case.

■ The district court did not err in requiring Mr. Hartmann to answer questions about the medical history of his wife's close family members. If Mrs. Hartmann were not incapacitated, she would have had to answer these questions on deposition. In revealing their medical conditions to her and/or Mr. Hartmann, the close family members would each have waived their physician-patient privilege as to the information they disclosed. Information a person makes available to a third party outside of the physician-patient privilege is not protected by the phy-

sician-patient privilege. *See Belle Bonfils Mem'l Blood Ctr.*, 763 P.2d at 1009.

 The physician-patient privilege was adopted to encourage a patient to make full disclosure to a doctor to enhance the effective diagnosis and treatment of illness. The statute also protects patients from the embarrassment and humiliation that might result from the physician's disclosure of information about the patient. These reasons for upholding the privilege do not exist when a person reveals his or her medical information to a third party. At the time plaintiff's counsel made his objections in the deposition, defendants sought only the medical history, as Mr. Hartmann knew it, of Mrs. Hartmann's brother, father, and mother related to diabetes, heart disease, and clotting conditions. Defendants did not ask the district court to order Mr. Hartmann to testify to or produce any family members' medical records, information, or substance of any physician-patient communications beyond that which the family members had previously revealed to Mr. and/or Mrs. Hartmann.

Mr. Hartmann contends that our decision in *Alcon v. Spicer*, 113 P.3d 735, stands for the broad proposition that the physician-patient privilege prevents him from disclosing any medical information that might cause the family members embarrassment or humiliation.

He also argues that any information or knowledge a person gains about his or her own health history "certainly derives from privileged communications ... shared privately, and in confidence, with his physician." In other words, because a person gains understanding of his medical conditions through consultation with doctors or nurses, the entire subject matter is privileged.

The statute and our decision in *Alcon v. Spicer* do not support such a broad reading of the physician-patient privilege. We observed that "[t]hrough application of privileges and waivers of privileges, courts attempt to balance the right to confidentiality in communication and the need to ascertain the truth to serve justice." 113 P.3d at 739. The physician-patient privilege "prevents certain persons from being examined as witnesses" and applies to "discovery of informa-

tion from a physician relating to the treatment of a patient" in order to " 'enhance the effective diagnosis and treatment of illness.' " *Id.* at 738 (quoting *Weil*, 109 P.3d at 129).

Nevertheless, when asked deposition questions about their own medical history, lay persons such as Mrs. and Mr. Hartmann will likely not be able to differentiate between information that is within the privilege and information that is not. Nor are we able to identify a bright line rule that compels a person to testify about his or her medical history without running the risk that a person will reveal the substance of physician-patient communications. In the case before us, we need not attempt such line-drawing, because Mrs. Hartmann and her close family members have impliedly waived their physician-patient privilege with regard to the information the district court ordered Mr. Hartmann to disclose, namely Mr. Hartmann's knowledge of his wife's family history of diabetes, heart disease, and clotting conditions.

In *Alcon v. Spicer* we held that the filing of a personal injury negligence claim for damages that included loss of future earnings and enjoyment of life did not constitute consent to general disclosure of all of the patient's communications with his or her physician. 113 P.3d at 740–41. Nevertheless, we held that waiver of the privilege occurs for discovery with respect to the injuries claimed in the lawsuit. *Id.* at 741.

We there reversed the district court because it ordered the plaintiff to authorize blanket release of the plaintiff's complete medical records from her family physician and ten years of her pharmaceutical records. An obvious presupposition of our ruling in favor of the privilege was that these documents recorded "medical confidences" between the patient and the health professional. *Id.*

There is no such court order in this case because the district court narrowly formulated its discovery order to medical conditions Mrs. Hartmann had placed at issue in this lawsuit.

## D.

### Mr. Hartmann's Health and Ability to Care for His Wife

The district court ordered Mr. Hartmann to answer deposition questions concerning his "health and ability to care for Pamela Hartmann." It appears that this portion of the district court's order focuses on Mr. Hartmann's deposition testimony about his role as Mrs. Hartmann's primary caregiver. As recited by Mr. and Mrs. Hartmann's counsel in opposition to the defense motion to compel, "Mr. Hartmann testified that he is the primary caregiver for his wife and wishes to continue with this role as long as practicable. Mr. Hartmann provided testimony regarding additional assistance he needs in taking care of his wife."

It is clear from his deposition testimony that Mr. Hartmann's ability to care for his wife relates to Mrs. Hartmann's medical malpractice claims, not Mr. Hartmann's consortium claim, contrary to the defense assertion. The defense argues that the district court's order compelling Mr. Hartmann to answer deposition questions allows inquiry into Mr. Hartmann's life expectancy with respect to his consortium claim and in regard to his health and ability to act as Mrs. Hartmann's caregiver. Mr. Hartmann counters that his medical condition is not relevant to either his loss of consortium claim or Mrs. Hartmann's medical malpractice action.

Defense counsel asked Mr. Hartmann these two questions, to which his counsel objected on the basis of the physician-patient privilege.

Q. Do you have any significant medical conditions which would have any impact on—on your future life expectancy?

. . .

Q. [D]o you feel like you're in good enough health now to take care of your wife into the foreseeable future?

The language of the district court's order does not require Mr. Hartmann to answer the deposition question about his life expectancy. Rather, the district court appears to focus on Mr. Hartmann's caregiver role in narrowing its order to Mr. Hartmann's "health and ability to care for Pamela Hartmann." This issue arose in Mr. Hartmann's deposition because he testified that he was his wife's primary caregiver; he wished to perform that role for as long as practicable; and he needed extra assistance in doing so.

But, Mr. Hartmann did not place his health or ability to care for Mrs. Hartmann at issue by filing a complaint on her behalf seeking damages in the medical malpractice lawsuit for her "long term care, home healthcare costs, special housing costs and other expenses." Whether that care is provided by Mr. Hartmann or by a paid caregiver is irrelevant to the calculation of economic damages in Mrs. Hartmann's medical malpractice action. The damages calculation depends upon Mrs. Hartmann's health and life expectancy, not Mr. Hartmann's.

In sum, the district court carefully tailored its order to take into account *Alcon v. Spicer* considerations in regard to Mrs. Hartmann's medical condition and family history pertaining to the cause of her stroke.[7] However, Mr. Hartmann's health and ability to care for Mrs. Hartmann is not relevant to Mrs. Hartmann's malpractice action and that portion of the district court's order cannot stand.

We do not address Mr. Hartmann's loss of consortium claim because the language of the district court's order does not clearly compel discovery of his medical history as it pertains to that claim and is not accompanied by a district court analysis and determination of the relevancy and privilege issues that may be involved.

## III.

Accordingly, we discharge the rule in part and make it absolute in part, and we return

---

7. Our decision does not prevent Mr. Hartmann from seeking a protective order from the district court to keep Mrs. Hartmann's family medical history confidential for use only in this lawsuit. Appropriate use of the protective order mechanism, see C.R.C.P. 26(c), can balance the privacy interest of affected persons with the truth-seeking objective of discovery on issues relevant to claims and defenses in the lawsuit.

this case to the district court for further proceedings consistent with this opinion.

Justice EID, specially concurring.

I agree with the majority that the district court did not err in requiring Mr. Hartmann to answer questions regarding his knowledge of whether Mrs. Hartmann's close family members experienced certain medical conditions. Maj. op. at 52. The majority comes to this conclusion, however, by finding that those close family members waived their physician-patient privilege by telling a third party (presumably either Mr. or Mrs. Hartmann) about their medical conditions. *See id.* at 52–53, 53. In my view, it is not necessary to reach the waiver issue because the questions posed to Mr. Hartmann did not implicate the physician-patient privilege in the first instance. I therefore would affirm, on this alternative ground, that portion of the district court's ruling regarding the questions posed to Mr. Hartmann about his knowledge of the health of Mrs. Hartmann's close family members.

The physician-patient privilege protects confidential communications between patients and certain medical providers. § 13–90–107(1)(d), C.R.S. (2006). The questions posed to Mr. Hartmann during the deposition did not fall within the scope of this privilege because he was not asked to reveal such communications. As the majority notes, he was asked whether, to his knowledge, Mrs. Hartmann's close family members had a history of diabetes, clotting conditions, or heart disease. Maj. op. at 47–48. He was not asked to testify about communications that occurred between those close family members and their doctors concerning the treatment of their conditions. Nor was he asked to disclose their medical records that might reveal such communications. The questions posed to Mr. Hartmann simply did not implicate the privilege.

To put it somewhat differently, Mr. Hartmann was being asked about his knowledge of a factual matter—that is, whether Mrs. Hartmann's close family members suffered from certain medical conditions. Such a factual matter is not protected by the physician-patient privilege. *Cf. Upjohn Co. v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (noting that the attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts...."); *People v. Trujillo,* 144 P.3d 539, 545 (Colo.2006) (noting that statements of fact are not covered by the attorney-client privilege).

Because the physician-patient privilege is not implicated, the framework of *Alcon v. Spicer*—a case in which the privilege clearly was at issue—is inapplicable. *See* 113 P.3d 735 (Colo.2005) (holding that the physician-patient privilege protects against the disclosure of a patient's medical records unless waived); maj. op. at 51–52, 53 (applying *Alcon*).

But the majority's waiver analysis regarding the questions posed about the health of Mrs. Hartmann's close family members is not only unnecessary, it is problematic on its own terms. The majority's theory of the case appears to be that not only did Mrs. Hartmann waive *her* physician-patient privilege by placing the cause of her stroke at issue in this litigation, maj. op. at 51, 53, her close family members waived *their* privileges as well by telling Mr. and/or Mrs. Hartmann about their medical conditions. *See id.* at 52 (noting that the close family members waived the privilege by "revealing their medical conditions to [Mrs. Hartmann] and/or Mr. Hartmann"); *id.* at 53 (finding that the deposition questions were appropriate because they did not ask for any information "beyond that which the family members had previously revealed to Mr. and/or Mrs. Hartmann"); *id.* (noting that the close family members "impliedly waived their ... privilege"). As an initial matter, this theory is troubling because we have no idea whether such conversations among Mrs. Hartmann, Mr. Hartmann, and the close family members actually occurred; the record is simply silent on this factual issue.

More importantly, the majority cites no authority for the proposition that a waiver necessarily occurs once someone tells a close family member about an otherwise privileged communication he had with a physician. The majority notes that under *Belle Bonfils Memorial Blood Center v. District Court,* 763

P.2d 1003 (Colo.1988), "[i]nformation a person makes available to a third party outside of the physician-patient privilege is not protected by the physician-patient privilege." Maj. op. at 52–53. That is certainly true as far as it goes; in other words, the communications among Mr. Hartmann, Mrs. Hartmann, and the close family members, if they occurred, would not themselves be covered by the physician-patient privilege in the first instance, as such communication would not have been made to medical providers. *Belle Bonfils*, 763 P.2d at 1009 (holding that communications between an individual and an employee of blood bank are not covered by the privilege as employee was not a medical provider). But *Belle Bonfils* does not support the theory put forward by the majority—namely, that a patient necessarily waives the privilege with regard to an otherwise privileged communication with her medical provider when she tells a close family member about it. *Belle Bonfils* defines the scope of the privilege in the first instance, not waiver of that privilege.

Finally, the majority implies that the waiver that occurred when Mrs. Hartmann placed the cause of her stroke at issue somehow accomplished a similar waiver for Mrs. Hartmann's close family members. It states that Mrs. Hartmann "placed her medical condition and, thus, that of her close family for diabetes, heart disease, and clotting conditions at issue," and that "[b]ecause she has impliedly waived her physician-patient privilege in regard to such information [i.e., her medical condition and that of her close family for diabetes, heart disease, and clotting conditions], it is discoverable." Maj. op. at 51. Plainly, however, Mrs. Hartmann cannot waive the privilege for her close family members; that waiver can only be accomplished by the family members themselves. *People v. Palomo*, 31 P.3d 879, 885 (Colo.2001).

When, as here, the physician-patient privilege is not implicated, our inquiry is at its end. Because I believe that the majority should have based its affirmance of the district court's order on the fact that the physician-patient privilege was not implicated by the questions posed to Mr. Hartmann, I specially concur.

I am authorized to state that Justice RICE and Justice COATS join in this special concurrence.